**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| WILLIAM CABRERA, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>EMERSON ELECTRIC CO., a Missouri Corporation and RIDGE TOOL COMPANY, an Ohio corporation,<br><br>Defendants. | Case No: 1:26-cv-1176<br><br>District Judge Daivd A. Ruiz |

**<u>FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND</u>**

Plaintiff, William Cabrera ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, hereby brings this Collective and Class Action Complaint against Emerson Electric Co. ("Defendant Emerson") and Ridge Tool Company ("Defendant Ridge Tool") (Defendant Emerson and Defendant Ridge Tool collectively referred to as "Defendants") and alleges as follows:

## <u>INTRODUCTION</u>

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated employees of Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. Defendant Emerson is a global industrial technology and software company that

holds itself out as serving as a leader in industrial automation.[1]

3. Defendant Ridge Tool is a global manufacturer of professional-grade tools and provides specialized equipment primarily for plumbing, pipe fitting, construction, and HVAC trades.[2]

4. Defendants employ and employed hundreds (if not thousands) of hourly workers, including Plaintiff, with job titles that include, but are not limited to, Furnace Operator (collectively referred to as "Hourly Employees") to facilitate their operations.

5. Defendants maintain locations throughout the United States, including, but not limited to, the States of Arkansas, Mississippi, Missouri, Ohio, Texas, and Virginia.

6. Defendants required Plaintiff and their Hourly Employees to wear company-issued or mandated uniforms and protective clothing during their work shifts to comply with company policies.

7. The company-issued or mandated protective clothing and safety gear included, but was not limited to, uniforms; safety shoes; safety glasses; goggles or face shield; and hearing protection.

8. Defendants required Plaintiff and the Hourly Employees to change into ("don") personal protective equipment ("PPE") before their work shifts in designated locations at Defendants' manufacturing facilities.

9. Defendants required Plaintiff and its Hourly Employees to don the same or substantially similar PPE, and Defendants compensated Plaintiff and its Hourly Employees in the same or similar manner.

---

[1] https://www.emerson.com/en/corporate/about-us (last visited July 15, 2026).
[2] https://www.ridgid.com/us/en (last visited July 15, 2026).

10. The donning process took Plaintiff approximately five (5) minutes to perform every shift and was compensable because Defendants required him and the Hourly Employees to don the PPE at the worksite and wear it throughout their work shifts.

11. The PPE was an integral and indispensable part of Plaintiff and the Hourly Employees' principal work activities, as they could not safely perform their work activities without wearing the PPE. Defendants, however, failed to compensate Plaintiff and their Hourly Employees for the time they spent donning the PPE every shift.

12. As a result, Defendants violated the FLSA and common law by systematically failing to compensate Plaintiff and the Hourly Employees for compensable work activities, which resulted in him and the Hourly Employees not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

13. The individuals Plaintiff seeks to represent in this action are current and former Hourly Employees who are similarly situated to each other in terms of their positions, job duties, pay structure, and claims regarding Defendants' violations of federal and state law.

14. Defendants knew or could have easily determined how long it took Plaintiff and the Hourly Employees to complete their donning activities, and Defendants could have properly compensated Plaintiff and the Hourly Employees for this pre-shift work but deliberately chose not to.

15. Defendants' practice of failing to compensate Plaintiff and the Hourly Employees for all hours worked violated their rights under the FLSA.

16. Employees who elect to participate in this FLSA collective action seek compensation for all off-the-clock and uncompensated work performed for Defendants, an equal

amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

17. Plaintiff seeks a declaration that his rights, and the rights of the putative Collective/Class members were violated as well as an award of unpaid wages, liquidated damages, injunctive and declaratory relief, attendant penalties, and attorneys' fees and costs to make them whole for damages they suffered, and to ensure that Defendants will not subject them or future workers to such illegal conduct in the future.

18. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who work or have worked for Defendants at any time in the past three years.

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

20. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

21. The FLSA applies in this case on an enterprise basis because Defendants' annual sales exceed $500,000, and Defendants have more than two employees. The FLSA applies in this case on an individual basis because Defendants' employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce.

## PARTIES

22. Plaintiff is a resident of Elyria, Ohio and worked for Defendant Ridge Tool at its Elyria, Ohio facility as a non-exempt, hourly Furnace Operator from approximately July 2023

through October 2025. Plaintiff's consent to join form was previously filed at ECF No. 1-1.

23. Plaintiff's most recent hourly rate of pay was $25.50.

24. Additional putative Collective and Class members were or are employed by Defendants as Hourly Employees during the past three (3) years and their consent to join forms will also be filed in this case.

25. Defendant Emerson is a Missouri corporation with its principal place of business located at 8027 Forsyth Boulevard, St. Louis, Missouri 63105-1706.

26. Defendant Emerson's registered agent for purposes of service is Michael Tang, 8027 Forsyth Boulevard, St. Louis, Missouri 63105-1706.

27. Defendant Ridge Tool is an Ohio corporation with its principal place of business located at 400 Clark Street, Elyria, Ohio 44035.

28. Defendant Ridge Tool's registered agent for purposes of service is Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, Ohio 43215.

29. At all relevant times, Defendants were a common enterprise and "joint employers" of Plaintiff and similarly situated individuals as defined by the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. 791.2(a).

## GENERAL ALLEGATIONS

30. Prior to hiring prospective Hourly Employees, Defendants provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

31. Defendants maintained documents demonstrating the promised hourly wage for each Hourly Employee, including, but not limited to: offer letters, paystubs, and/or other payroll records.

32. On or about July 2023, Plaintiff received an offer from Defendants to work as an Hourly Employee, and he accepted Defendants' offer with the understanding that his base hourly rate would be paid for all hours worked.

33. Plaintiff performed and fulfilled his duties under his agreement with Defendants by carrying out his job responsibilities which included, but were not limited to, the off-the-clock work described herein.

34. Defendants paid their Hourly Employees at varying hourly rates.

35. Defendants' Hourly Employee jobs are and were full-time positions that required up to forty (40) or more hours of work in a workweek.

36. Throughout Plaintiff's employment with Defendants, Plaintiff regularly worked more than forty (40) hours in a workweek.

37. Defendants provided training to Plaintiff and its Hourly Employees on, *inter alia*, how to carry out their day-to-day job responsibilities and Defendants' policies. The training that all of Defendants' Hourly Employees received was substantially, if not entirely, the same.

38. At all relevant times, Defendants controlled Plaintiff's and all other Hourly Employees' work schedules, duties, protocols, applications, assignments, and employment conditions.

***A. Pre-Shift Off-the-Clock Work.***

39. Defendants required Plaintiff and the Hourly Employees to don company-issued PPE before their work shifts at a designated location at Defendants' facility (generally the locker room). Before their scheduled shifts, and before beginning production activities, Plaintiff and the Hourly Employees were required to put on their company-issued PPE, including uniforms; safety shoes; safety glasses, goggles, or face shield; and hearing protection.

40. Defendants prohibited Plaintiff from taking PPE home with him or otherwise removing PPE from Defendants' facilities.

41. Defendants prohibited Plaintiff and their Hourly Employees from leaving the locker room and walking to their workstation without wearing the PPE.

42. Defendants required Plaintiff and the Hourly Employees to wear the PPE throughout their shifts in order to protect the health and safety of their employees manufacturing, processing, and packaging their products.

43. The pre-shift donning process took Plaintiff and the Hourly Employees substantial time on a daily basis of at least five (5) minutes per shift and occurred before the start of their scheduled shifts.

44. Defendants, however, failed to compensate Plaintiff and the Hourly Employees for this compensable time. Instead, Defendants compensated Plaintiff and the Hourly Employees as of the start of their scheduled shifts, despite requiring them to don their PPE beforehand. As a result, Plaintiff and the Hourly Employees were not compensated beginning with their first principal activity of the workday.

45. Defendants knew or could have easily determined how long it took Plaintiff and the Hourly Employees to complete their donning activities, and Defendants could have properly compensated Plaintiff and the Hourly Employees for this pre-shift work but deliberately chose not to.

***B. Donning PPE at the Worksite is a Principal Work Activity and is Compensable Under the FLSA***

46. Donning protective clothing and safety gear is a principal activity under the Portal-to-Portal Act, 29 U.S.C. § 254, and thus time spent in that activity, as well as any walking and waiting time that occurs after the employee engages in their first principal activity, is part of a

"continuous workday" and is compensable under the FLSA.

47. The determination of whether donning a safety uniform is compensable begins with *Steiner v. Mitchell*, 350 U.S. 247 (1956), the seminal case on the subject. In *Steiner*, the Supreme Court held that donning and doffing uniforms was compensable when employees handling dangerous chemicals in a wet storage battery factory were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id*. at 248.

48. The factory workers in *Steiner* were exposed to high levels of lead particles (dust and fumes), which "permeate[d] the entire plant and everything and everyone in it." *Id*. at 249. Lead dust attached to the skin, hair, clothing and shoes of the employees, and presented significant risks to family members of the workers because toxic particles could be "brought home in the workers' clothing or shoes." *Id*. at 250.

49. Consequently, the workers were issued old but clean clothes on-site and were required to don and doff the clothes at the factory and shower on the premises before leaving in order to minimize health risks to themselves and others. *Id*. at 255. Under these circumstances, the Court had "no difficulty" concluding that these dress-related activities were compensable under the FLSA. *Id*.

50. Following the Supreme Court's decision in *Steiner*, the Department of Labor ("DOL") issued regulations providing further guidance about the types of dress-related activities that are compensable under the FLSA. One such regulation, 29 C.F.R. § 790.8(c), describes "principal activity" as follows:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the

> beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

51. More recently, in an advisory memorandum regarding the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the DOL reiterated its view that the FLSA requires compensation for donning and doffing safety gear when the donning and doffing activities must be performed at work. The DOL opined:

> Therefore, the time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. … However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [worksite].

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at *https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2*.[3]

### *C. The Off-the-Clock Work Results in Viable "Gap Time" Claim.*

52. "There are two types of gap time claims: pure gap time claims—when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours—and overtime gap time claims—when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular

[3] In light of the Supreme Court's opinion in *Steiner*, numerous Circuit Courts have endorsed the compensability of donning and doffing safety gear. *See, e.g., Franklin v. Kellogg Co.*, 619 F.3d 620 (6th Cir. 2010) (holding that donning and doffing food protective clothing and safety gear was "integral and indispensable" to the principal activity of the employment"); *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 278 (1st Cir. 2004) (agreeing with district court "that the donning and doffing of required gear is an integral and indispensable part of Employees' principal activities"); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) (holding donning and doffing protective gear was "integral and indispensable" to plaintiffs' principal activities of employment).

wage rate." *Athan v. United States Steel*, 364 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

53. Plaintiff and the Hourly Employees regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

54. During the workweeks in which Plaintiff and the Hourly Employees did not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight-time wages, for which the Defendants directly benefited.

***D. Defendants Benefited from Plaintiff and the Hourly Employees' Off-the-Clock Work.***

55. At all relevant times, Defendants directed and directly benefited from the work performed by Plaintiff and the Hourly Employees in connection with the above-described donning work and knew it was occurring off-the-clock and without compensation.

56. Plaintiff and the Hourly Employees' donning conferred a benefit on Defendants in that they were ready to work in the required PPE at the beginning of their scheduled shift and that Defendants saved labor costs it would have spent had it paid Plaintiff and the Hourly Employees for that work.

57. At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and the Hourly Employees.

58. At all relevant times, Defendants were able to track the amount of time Plaintiff and the Hourly Employees spent in connection with the donning activities. However, Defendants failed to do so and failed to pay Plaintiff and the Hourly Employees for all compensable work performed.

59. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the Hourly Employees in order to require or pressure them into performing the donning activities without pay.

60. Defendants expressly trained and instructed Plaintiff and the Hourly Employees to begin performing the above-described donning activities outside of their scheduled shift times so that they were prepared to engage in their production activities prior to the start of their shifts.

61. At all relevant times, Defendants' policies and practices deprived Plaintiff and the Hourly Employees of wages owed for the donning activities they performed. Because Plaintiff and the Hourly Employees regularly worked forty (40) hours or more per week, Defendants' policies and practices also deprived them of overtime pay.

62. Defendants knew or should have known that the time spent by Plaintiff and the Hourly Employees in connection with the donning activities was compensable under the law. Indeed, in light of the explicit DOL guidance and Supreme Court case law cited above, there is no conceivable way for Defendants to establish that it acted in good faith.

63. Despite knowing Plaintiff and the Hourly Employees performed work before and after their scheduled work shifts, Defendants failed to make any effort to stop or disallow the pre-shift work and instead suffered or permitted it to happen.

64. Depending on when the uncompensated work was performed, unpaid wages related to the pre-shift work described herein are owed to Plaintiff and the Hourly Employees at the FLSA mandated overtime premium.

***E. Time Rounding.***

65. Generally, employers may record employees' starting and stopping times to the nearest five minutes or nearest one-tenth or quarter of an hour. 29 C.F.R. § 785.48(b). Such rounding practices are permissible only if they average out over time so that employees are fully compensated for all time actually worked. *Id*.

66. However, an employer's rounding policy is lawful only if employees are not

disadvantaged over time. 29 C.F.R. § 785.48. Rounding practices that result in significant discrepancies in recordkeeping or a failure to compensate employees for all time actually worked are improper. *Id*.

67. At all relevant times, Defendants utilized a computerized timekeeping system to record Hourly Employees' daily time punches.

68. Defendants permitted Plaintiff and the Hourly Employees to clock in up to five (5) minutes before the start of their scheduled shifts.

69. Throughout his employment with Defendants, Plaintiff recorded his time using Defendants' timekeeping system and clocked in up to five (5) minutes before the start of his scheduled shift and before donning the herein described PPE.

70. At all relevant times, Defendants maintained an unlawful time rounding policy that regularly and systematically rounded Hourly Employee punch-in times to the start of their scheduled shifts, resulting in Hourly Employees, including Plaintiff, being underpaid both straight time and overtime wages.

71. Defendants' policy was and is unlawful because, over time and in the aggregate, Defendants' Hourly Employees, including Plaintiff, did not benefit from the rounding practice and instead lost compensable straight-time and overtime pay due to the unlawful practice. As a result of Defendants' unlawful time rounding policy, Plaintiff and similarly situated Hourly Employees were not compensated for all time worked before the start of their scheduled shifts

72. In workweeks in which Plaintiff worked forty (40) hours or more, Defendants' rounding policy resulted in an unlawful deprivation of overtime wages required by the FLSA.

73. In workweeks in which Plaintiff worked close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated donning activities discussed

herein, Defendants' rounding policy also resulted in unpaid straight-time wages (i.e., overtime gap time).

74. Upon information and belief, Defendants applied these unlawful pay practices to all Hourly Employees in every workweek during the relevant period.

75. Defendants' time-rounding practice was intended to and has systematically underpaid all of Defendants' Hourly Employees, including Plaintiff.

76. Defendants' time-rounding practice did not meet the FLSA requirements of a legal "rounding" practice as described in 29 C.F.R. § 785.48 because the practice did not "average out so that the employees [we]re fully compensated for all the time they actually work[ed]," and instead "result[ed], over a period of time, in a failure to compensate the employees properly for all the time they [] actually worked." *Id.*

77. Upon information and belief, the FLSA violations discussed herein were committed against every Hourly Employee in every workweek and resulted in a substantial amount of uncompensated work over the past three (3) years.

78. Defendants knew or should have known that its time-rounding policy and practice violated the FLSA.

79. As a result of these *prima facie* FLSA violations, Defendants are liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

## JOINT EMPLOYMENT ALLEGATIONS

80. At all relevant times, Defendants were, at minimum, joint employers of Plaintiff and other Hourly Employees.

81. At all relevant times, Defendants managed the day-to-day supervision and direction of Plaintiff and the Hourly Employees.

82. At all relevant times, Defendants' corporate policies and procedures guided and mandated Plaintiff and the Hourly Employees' jobs.

83. At all relevant times, Defendants maintained the Plaintiff and other Hourly Employees' employment records.

84. The unlawful conduct at issue in this case arises from Defendants' corporate policies for Hourly Employees.

## SIMILARLY SITUATED ALLEGATIONS

85. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action on behalf of all of Defendants' current and former Hourly Employees who work or have worked for Defendants in the United States at any time in the past three (3) years.

86. Plaintiff and putative Collective members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, among other things, Plaintiff and putative Collective members were all: (1) classified as non-exempt hourly employees; (2) regularly worked more than forty (40) hours in a workweek; and (3) were required to perform pre-shift off-the-clock donning activities, resulting in an underpayment of wages.

87. Resolution of this action requires inquiry into common facts and legal issues applicable to all members of the proposed Collective.

88. These similarly situated individuals are known to the Defendants, are readily identifiable, and can be located through Defendants' payroll records, which Defendants are required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

89. Court-authorized notice pursuant to 29 U.S.C. § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct means including email and text messaging and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

90. Upon information and belief, there are hundreds of similarly situated current and former employees of Defendants who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

91. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

92. Defendants are an employer within the meaning of 29 U.S.C. § 203(d).

93. Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

94. Defendants jointly employed Plaintiff and all putative Collective members within the meaning of the FLSA.

95. Plaintiff and other putative Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

96. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

97. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

98. The FLSA requires all employers to keep accurate payroll records and time records

for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

99. At all relevant times, Defendants had a policy and practice of willfully refusing to pay Plaintiff and all putative Collective members for all hours worked, in violation of the FLSA.

100. The herein described donning activities performed every shift by Plaintiff and the Collective were an essential part of their jobs, and these activities and the time associated with these activities was not *de minimis*.

101. Defendants maintained an unlawful time-rounding policy that did not comply with 29 C.F.R. § 785.48(b) because the policy did not "average out so that the employees [we]re fully compensated for all the time they actually work," and instead "result[ed], over a period of time, in a failure to compensate the employees properly for all the time they have actually worked." *Id.*

102. As a result of Defendants' unlawful policy (including Defendants' rounding policy), Plaintiff and the putative Collective members were deprived of straight and premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein, in violation of the FLSA.

103. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendants could have easily accounted for and properly compensated Plaintiff and the putative Collective members for all work activities, but did not.

104. Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their backpay.

105. Plaintiff and all others similarly situated are entitled to backpay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the following relief:

a. Designation of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendants to provide Plaintiff a list of all current and former hourly employees who work or have worked for Defendants at any time in the past three years. This list shall include the last known addresses, email addresses, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate.

b. An Order certifying this case as a collective action under 29 U.S.C. § 216(b) with respect to Plaintiff's FLSA claim (Count I);

c. An Order designating Plaintiff as representative of the putative FLSA Collective and undersigned counsel as Class counsel for the same;

d. In the event the Defendants seek to have discovery on the issues of whether the putative FLSA Collective members are similarly situated to Plaintiff, an order tolling the FLSA statute of limitations for the putative FLSA Collective members as of the filing of this Complaint through the end of the *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) discovery period;

e. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

f. An Order declaring Defendants' violations of the FLSA were willful;

g. A monetary judgment awarding full back pay and an equal amount in liquidated damages;

h. An award of pre-judgment and post-judgment interest;

i. An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of a service payment to the named Plaintiff; and

j. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of all others similarly situated, hereby demands a trial by jury on all issues in this complaint that are so triable as a matter of right.

Date: July 15, 2026

Respectfully submitted,

*<u>/s/ Jason J. Thompson</u>*
Jason J. Thompson
SOMMERS SCHWARTZ, P.C.
One Town Square, 17th Floor
Southfield, Michigan 48076
Telephone: (248) 415-3206
Fax: (248) 436-8453
jthompson@sommerspc.com

*Attorneys for Plaintiff and the Proposed Collective and Class Members*